**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| OBAN US, LLC | |
|                 Plaintiff, | |
| vs. | Civil Action No. 3:13-cv-01076-JBA |
| NAUTILUS, INC. and SPORTS BEAT, INC. | |
|                 Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
<u>OF DEFENDANT NAUTILUS, INC.'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.   OBAN'S OPPOSITION IGNORES THE LEGAL STANDARD FOR INDIRECT TRADEMARK INFRINGEMENT. ................................................................................ 2

II.  OBAN HAS FAILED TO STATE A CLAIM FOR INDIRECT COPYRIGHT INFRINGEMENT. .................................................................................................. 5

    A.   Oban Was Required to Plead Registration. ............................................. 5

    B.   Oban's Factual Allegations Cannot Satisfy the Legal Standard for Vicarious Copyright Infringement. ............................................................. 6

III. OBAN FAILS TO ADDRESS THE LEGAL STANDARD FOR UNFAIR TRADE PRACTICES CLAIMS. ........................................................................................... 9

IV.  OBAN'S TRADE DRESS INFRINGEMENT CLAIM IS NOT SAVED BY THE ATTACHMENT OF IMAGES TO THE AMENDED COMPLAINT. ................................... 9

CONCLUSION ................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

Accurate Grading Quality Assur., Inc. v. Thorpe,
 No. 12-1343, 2013 WL 1234836 (S.D.N.Y. Mar. 26, 2013)......................................................6

Berry v. Deutsche Bank Trust Co. Americas,
 No. 07-7634, 2008 WL 4694968 (S.D.N.Y. Oct. 21, 2008) ............................................7, 8, 9

Gibson Guitar Corp. v. Viacom Int'l Inc.,
 No. 12-10870, 2013 WL 2155309 (C.D. Cal. May 17, 2013)................................................3, 4

Heinlein v. W. Pub. Corp.,
 No. 12-386, 2012 WL 10096860 (D. Conn. Dec. 27, 2012) ...................................................6

ID7D Co., Ltd. v. Sears Holding Corp.,
 No. 11-1054, 2012 WL 1247329 (D. Conn. Apr. 13, 2012) ..................................................10

Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,
 456 U.S. 844 (1982)................................................................................................................4

K-Beech, Inc. v. Does 1-29,
 No. 11-3331, 2011 WL 4401933 (E.D.N.Y. Sept. 19, 2011)..................................................6

La Resolana Architects, PA v. Clay Realtors Angel Fire,
 416 F.3d 1195 (10th Cir. 2005) ..............................................................................................6

Mini Maid Services v. Maid Brigade Systems,
 967 F.2d 1516 (11th Cir. 1992) .........................................................................................7, 8

Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.,
 No. 09-2669, 2012 WL 1021535 (S.D.N.Y. Mar. 26, 2012)...................................................6

Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.,
 No. 07-6959, 2010 WL 4968072 (S.D.N.Y. Dec. 6, 2010) .....................................................5

Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,
 494 F.3d 788 (9th Cir. 2007) ..............................................................................................4, 7

Perrelli v. Prudential Ins. Co., Inc.,
 No. 07-1797, 2008 WL 4307103 (D. Conn. Sept. 19, 2008) ..................................................1

Power Test Petroleum Distributors, Inc. v. Manhattan & Queens Fuel Corp.,
 556 F. Supp. 392 (E.D.N.Y. 1982).........................................................................................4

Reed Elsevier, Inc. v. Muchnick,
 559 U.S. 154 (2010) ...............................................................................................................6

Tiffany (NJ) Inc. v. eBay, Inc.,
    576 F. Supp. 2d 463 (S.D.N.Y. 2008) ................................................................................4

**Statutes**

17 U.S.C. § 411 ...............................................................................................................................6

15 U.S.C. § 1125(a) ........................................................................................................................9

**Other Authorities**

F.R.C.P. 12(b)(6) ............................................................................................................................2

**INTRODUCTION**

Oban's opposition is grounded in the flawed legal proposition that a trademark licensor who possesses the right to police its own *trademark* is automatically liable for any of a licensee's independent acts of trademark, trade dress or copyright infringement associated with the licensee's *product*. (Pl's. Opp'n Br. at 1.) As a fall back, Oban argues that at minimum a licensor becomes automatically liable once it has knowledge of the licensee's infringement. But neither of these propositions are the law. Rather, as Nautilus explained in its opening brief, there are clear legal standards for each of Oban's asserted causes of action, each of which Oban has ignored and failed to meet.[1]

To adequately plead contributory trademark infringement, for example, Oban must allege facts sufficient to make plausible either that Nautilus intentionally induced Sports Beat to infringe (which Oban does not even attempt to allege), or that Nautilus exercised direct control and monitoring *of the instrument of infringement*, and affirmatively authorized Sports Beat to use its Bowflex trademark after receiving notice of Sports Beat's alleged infringement. Oban argues that "Nautilus had a duty to ensure that its Bowflex brand was being properly used." (Pl.'s Opp'n Br. at 1.) But a duty to protect its own Bowflex mark is different from a duty or ability to control the instrument of infringement, i.e., Sports Beat's allegedly infringing heart rate monitors. Moreover, Oban has not alleged that Nautilus took any action to authorize Sports Beat's infringement after receiving notice. In fact, Oban alleges exactly the opposite—that shortly after receiving notice from Oban, Nautilus informed Sports Beat that the license would not be reviewed and thus would be terminated. Oban's allegations simply do not support a legally plausible claim for contributory trademark infringement.

---

[1] Oban attaches an affidavit to its opposition brief. (D.I. 23.1.) It is black letter law that matters outside the four corners of the complaint are not considered on a motion to dismiss. See, e.g., Perrelli v. Prudential Ins. Co., Inc., No. 07-1797, 2008 WL 4307103, at *2 (D. Conn. Sept. 19, 2008). Even if Oban's affidavit could be considered, moreover, the allegations therein are either duplicative of allegations in the Amended Complaint or irrelevant to the sufficiency of Oban's claims against Nautilus. The allegations that are not wholly duplicative are addressed infra in notes 2 and 4.

Similarly, to state a claim for vicarious copyright infringement, Oban was required as a threshold matter to plead registration of its alleged copyright. Oban's argument in its opposition that it need only plead application for registration (Pl.'s Opp'n Br. at 3-4) is wrong because it is contrary to the plain statutory language and the relevant case law. Oban also was required to plausibly allege that Nautilus had the right and ability to supervise Sports Beat's allegedly infringing activity. But Oban again merely argues that "Nautilus had an affirmative duty to supervise Sport Beat's use of the Bowflex trademark." (Pl's. Opp'n Br. at 5.) Thus, Oban again conflates Nautilus' control over its own Bowflex trademark with control over Sports Beat's use of the allegedly copyrighted materials and again fails to address the applicable legal standard.

Oban similarly fails to address the legal standards relevant to its unfair trade practice claims against Nautilus. Oban's opposition brief entirely ignores (1) that Oban must allege that Nautilus used Oban's trademark in commerce; and (2) that any CUTPA claim must fail because trademark licensors are not liable under CUTPA for the acts of their licensees. Instead, Oban incorrectly suggests that it need only allege that the public is likely to be misled to state a claim. (Pl.'s Opp'n Br. at 6.) Finally, Oban's contention that its trade dress claim is sufficiently pleaded because it has attached images of its product to the Amended Complaint again ignores the relevant case law. This Court has unambiguously held that merely attaching images is not sufficient to state a claim for trade dress infringement.

Because Oban's Amended Complaint does not and cannot state any claim against Nautilus upon which relief can be granted, the Court should grant Nautilus' motion to dismiss under Fed. R. Civ. P. 12(b)(6).

## **ARGUMENT**

I.  **OBAN'S OPPOSITION IGNORES THE LEGAL STANDARD FOR INDIRECT TRADEMARK INFRINGEMENT**.

The Amended Complaint does not identify the type of indirect trademark infringement Oban attempts to assert against Nautilus. Oban's opposition brief does not contend that the

2

Amended Complaint states a claim for vicarious trademark infringement, however, and asserts only contributory trademark infringement against Nautilus. (Pl's. Opp'n Br. at 1-3.)

As Nautilus explained in its opening brief, to state a claim for contributory trademark infringement Oban was required to allege: (1) that Nautilus intentionally induced Sports Beat to infringe; or (2) that Nautilus exercised direct control and monitoring of the instrument of infringement, i.e., Sports Beat's heart rate monitor, and that Nautilus affirmatively authorized Sports Beat to use its Bowflex trademark after receiving notice of Sports Beat's alleged infringement. (Def.'s Opening Br. at 4-7.)

Oban has not challenged Nautilus' demonstration that the Amended Complaint is devoid of any plausible allegations of intentional inducement. Oban does not, for example, allege that Nautilus somehow was aware of and encouraged Sports Beat to use Oban's trademark on Sports Beat's products. See, e.g., Gibson Guitar Corp. v. Viacom Int'l Inc., No. 12-10870, 2013 WL 2155309, at *3 (C.D. Cal. May 17, 2013) (Intentional inducement "requires that the contributory infringer do more than be able to reasonably anticipate the direct infringement.") (internal quotation omitted). Thus, Oban's contributory trademark infringement claim cannot be based on an inducement theory.

Nor does Oban explain how its Amended Complaint plausibly suggests "direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." Gibson, 2013 WL 2155309, at *4. In its opposition brief, Oban asserts that "Nautilus has a duty to ensure that its Bowflex brand was being properly used" and "took steps to protect [the Bowflex mark]." (Pl.'s Opp'n Br. at 1, 2.) But as Nautilus discussed in its opening brief, the "instrumentality . . . used to infringe" is not Nautilus' Bowflex trademark but rather Sports Beat's heart rate monitors. (Def.'s Opening Br. at 5-6.) Oban has not and cannot allege that Nautilus directly controlled and monitored *Sports Beat's heart rate monitors* themselves. (Id. at 6.) The Gibson Court addressed this exact issue, explaining that even though "[the licensor] could bar [the licensee] from selling [an allegedly infringing product with the licensed mark], which would

3

have the practical effect of stopping or reducing the infringing activity, [that] would not prevent [the licensee] from designing and selling [an infringing product] without the [] mark." Gibson, 2013 WL 2155309, at *5.  See also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 807 (9th Cir. 2007) (allegation that Visa enabled direct trademark infringement of websites by providing their payment system was insufficient to show direct control of the instrument of infringement because Visa could not prevent the websites from distributing the infringing images).  Thus, even if it assumed that Nautilus could have prevented Sports Beat from using the Bowflex trademark, Oban has not alleged (and cannot allege) that Nautilus could prevent Sports Beat from selling the allegedly infringing heart rate monitor *without* the Bowflex trademark.[2]  Gibson, 2013 WL 2155309, at *5.  Oban has therefore failed to plausibly allege that Nautilus had the requisite "control . . . over the third party's means of infringement," and has failed to state a claim for contributory infringement.  Id.

Disregarding the case law that sets out the relevant legal standard, Oban cites instead to Power Test Petroleum Distributors, Inc. v. Manhattan & Queens Fuel Corp., 556 F. Supp. 392 (E.D.N.Y. 1982).  (Pl's. Opp'n Br. at 2-3.)  Power Test is inapposite because it involved the supply of a physical product and thus a different standard than is applied when the alleged contributory infringer supplies a service or intangible good.[3]  This distinction is, in fact, explained in the other case Oban cites, Tiffany (NJ) Inc. v. eBay, Inc., 576 F. Supp. 2d 463, 505-06 (S.D.N.Y. 2008) aff'd in part, rev'd in part, 600 F.3d 93 (2d Cir. 2010) (when the alleged

---

[2] Oban's affidavit states that "the Bowflex website continues to sell products that had been licensed to Sports Beat. (See Exhibit P-10.)"  (D.I. 23-1 at ¶ 12.)  Exhibit P-10 displays a product that is not accused of infringement, however.  (D.I. 21-1 at Exhibit P-10.)  Accordingly, this factual allegation should be disregarded because it is irrelevant and because it is outside of the four corners of the Amended Complaint.  See supra note 1.

[3] The Power Test court directly applied the second prong of the Inwood test for contributory infringement, which asks whether the defendant "continues to supply its *product* to one whom it knows or has reason to know is engaging in trademark infringement."  Id. at 394 (quoting Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 854 (1982)) (emphasis added).

4

contributory infringer does not supply a physical product, the relevant question is whether it had "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark") (internal quotations omitted).

Finally, Oban's opposition arguments fail for the additional reason that it has failed to plausibly allege that Nautilus approved a Sports Beat product or renewed its license with Sports Beat *after* it had knowledge of Sports Beat's alleged infringement. <u>Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.</u>, No. 07-6959, 2010 WL 4968072, at *6 (S.D.N.Y. Dec. 6, 2010).  Oban's allegation that it notified Nautilus of Sports Beat's alleged infringement "[o]n or about November 1, 2012," (Amended Complaint at ¶ 21), is insufficient because Oban does not allege that Nautilus took any affirmative action with respect to Sports Beat after that date.  On the contrary, Oban alleges only that Nautilus terminated the license agreement with Sports Beat but that Sports Beat continues to sell the allegedly infringing product.  (<u>Id.</u> at ¶¶ 21, 23.)  These allegations are insufficient to state a claim for contributory copyright infringement.  <u>See</u> <u>Nomination</u>, 2010 WL 4968072, at *6.  Oban attempts to overcome this deficiency by asserting that Nautilus "knew or should have known" of Sports Beat's alleged infringement prior to November 1, 2012.  (Pl's. Opp'n Br. at 2-3; Amended Complaint at ¶ 17, 24.)  That allegation "merely restate[s] an element of contributory infringement," and does not plead facts rendering it plausible.  <u>Nomination</u>, 2010 WL 4968072 at *6.  For this additional reason, Oban has failed to state a claim for contributory trademark infringement and the Court should dismiss this claim against Nautilus.

II.         OBAN HAS FAILED TO STATE A CLAIM
<u>FOR INDIRECT COPYRIGHT INFRINGEMENT</u>.

         A.         <u>Oban Was Required to Plead Registration</u>.

As Nautilus explained in its opening brief, Oban's copyright claims must be dismissed because Oban has failed to meet the threshold requirement of pleading registration of the copyright at issue.  (<u>See</u> Def's Opening Br. at 9 (citing <u>Muench Photography, Inc. v. Houghton</u>

5

Mifflin Harcourt Pub. Co., No. 09-2669, 2012 WL 1021535, at *2. (S.D.N.Y. Mar. 26, 2012).) See also Heinlein v. W. Pub. Corp., No. 12-386, 2012 WL 10096860, at *3 (D. Conn. Dec. 27, 2012). The registration requirement promotes the incentive-based copyright registration system created by Congress. Muench, 2012 WL 1021535, at *4 (citing Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 168 n.9 (2010)).

In response, Oban asserts that merely pleading that it has *applied* for copyright registration satisfies the registration requirement. (Pl's. Opp'n Br. at 3-4.) Oban is incorrect. "[M]ere application is legally insufficient as '[c]ourts in this Circuit . . . require[ ] that a plaintiff either hold a valid copyright registration outright or have applied and been refused a registration prior to filing a civil claim[.]' [T]hus '[a] pending application does not suffice.'" Accurate Grading Quality Assur., Inc. v. Thorpe, No. 12-1343, 2013 WL 1234836, at *7 (S.D.N.Y. Mar. 26, 2013) (quoting Muench Photography, 2012 WL 1021535, at *5). See also K-Beech, Inc. v. Does 1-29, No. 11-3331, 2011 WL 4401933, at *1 (E.D.N.Y. Sept. 19, 2011) (allegation that registration is pending not sufficient to plead copyright infringement). Indeed, Oban's own leading case stands for exactly this proposition: "The plain language of [17 U.S.C. § 411] requires [that] the Register of Copyrights must affirmatively determine copyright protection is warranted [] before registration occurs under the Act. And only upon registration or refusal to register is a copyright holder entitled to sue for copyright infringement . . . ." La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d 1195, 1200-01 (10th Cir. 2005) abrogated by Muchnick, 559 U.S. at 130.

Oban has failed to meet the threshold registration requirement of 17 U.S.C. § 411 and its copyright claim must be dismissed.

    B.    Oban's Factual Allegations Cannot Satisfy the
           Legal Standard for Vicarious Copyright Infringement.

Oban's Amended Complaint does not identify the type of indirect copyright infringement Oban attempts to assert against Nautilus. Oban's opposition brief does not contend that the

Amended Complaint states a claim for contributory copyright infringement, however, but rather asserts only that it has sufficiently pleaded vicarious copyright infringement against Nautilus. (Pl's. Opp'n Br. at 3-5.)

As Nautilus discussed in its opening brief, (Def's Opening Br. at 10-11), Oban fails to state a claim for vicarious copyright infringement because it has not plausibly alleged the elements of the cause of action, namely that Nautilus had the "'[1] right and ability to supervise [that] coalesced with [2] an obvious and direct financial interest in [3] the exploitation of copyrighted materials.'" Berry v. Deutsche Bank Trust Co. Americas, No. 07-7634, 2008 WL 4694968, at *4 (S.D.N.Y. Oct. 21, 2008) aff'd, 378 F. App'x 110 (2d Cir. 2010) (brackets in original) (quoting Softel, Inc. v. Dragon Med. & Scientific Comm., Inc., 118 F.3d 955, 971 (2d Cir. 1997)). In short, Oban had to allege that Nautilus had "the right and ability to control the infringing activity." Perfect 10, 494 F.3d 788 at 803.

In its opposition brief, Oban again argues that "Nautilus had an affirmative duty to supervise Sport Beat's use of the Bowflex trademark." (Pl's. Opp'n Br. at 5.) Even if that allegation is correct, however, an affirmative duty to supervise the use of *the Bowflex trademark* does not equate to a right and ability to supervise *the exploitation of copyrighted materials*, i.e., Sports Beat's sales of the allegedly infringing heart rate monitors and associated packaging. As with its trademark argument, Oban erroneously conflates Nautilus' control of its own trademark with control over Sports Beat's alleged infringement. See, e.g., Perfect 10, 494 F.3d at 804-05 (allegation that contractual terms gave VISA the right to require member merchants to cease illegal activity not sufficient to state a claim for vicarious copyright infringement because VISA had "no absolute right to . . . stop websites from reproducing, altering, or distributing infringing images"). Oban misguidedly cites to Mini Maid Services v. Maid Brigade Systems, 967 F.2d 1516 (11th Cir. 1992), to bolster its argument. (Pl's. Opp'n Br. at 5.) Mini Maid is a trademark case with no copyright issues and thus does not appear relevant. Mini Maid, 967 F.2d at 1519. Furthermore, the Mini Maid court *refused* to extend secondary liability to a trademark licensor

7

based on the licensor's duty to supervise its own trademark. Id. at 1521. If anything, Mini Maid supports dismissal of Oban's copyright claims.

Furthermore, "[t]he mere fact that the [defendants] could have policed [the infringer] . . . is insufficient to impose vicarious liability." Berry, 2008 WL 4694968, at *5 (quoting Artist Music Inc. v. Reed Publ'g USA, Inc., No. 93-3428, 1994 WL 191643, at *5 (S.D.N.Y. May 17, 1994)). Rather, "[t]he parties' paths must cross on a daily basis, and the character of this intersection must be such that the party against whom liability is sought is in a position to control the personnel and activities responsible for the direct infringement." Id. (quoting Banff Ltd. v. Limited, Inc., 869 F.Supp. 1103, 1109 (S.D.N.Y.1994)). Oban has not and cannot allege any such interaction and control.

Oban asserts in its opposition brief that "Nautilus had the power to exercise a right to stop Sports Beat from infringing." (Pl's. Opp'n Br. at 5.) But that is not, and could not be, alleged in the Amended Complaint. (See Amended Complaint at ¶¶ 23-24 & Exhibit P-8 at 2.) The only factual allegation Oban has pled and can plead is that Nautilus instructed Sports Beat to destroy "all Bowflex branded products" at the conclusion of the license. (Id.) And as Nautilus has repeatedly explained, the ability to stop Sports Beat from using Nautilus' own trademark does not equate to the power to stop Sports Beat's alleged misuse of *Oban's* intellectual property. Accordingly, Oban's assertion in its opposition that Nautilus could "stop Sports Beat from infringing" is merely conclusory and cannot support its claim of vicarious copyright infringement.

Finally, Oban has failed to plead factual allegations sufficient to render plausible that Nautilus had an "obvious and direct financial interest in the [] exploitation of copyrighted materials."[4] Berry, 2008 WL 4694968, at *4. Oban asserts in its opposition brief that Nautilus

---

[4] Oban's affidavit refers to a news release announcing a new heart-rate product that is unrelated to Oban's claims. (D.I. 23-1 at ¶ 12.) This factual allegation should be disregarded because it is outside of the four corners of the Amended Complaint, see supra note 1, and because it is irrelevant.

8

benefitted "directly." (Pl's. Opp'n Br. at 5.) There is no such allegation in the Amended Complaint, however, which states only that "Nautilus reaped benefits" from allowing "Sports Beat to use the Bowflex brand and to misuse that brand to the detriment of the Plaintiff." (Amended Complaint at ¶ 20.) This allegation is not sufficient to support the "direct financial interest in the exploitation of copyrighted materials" required to state a claim for vicarious liability. See Berry, 2008 WL 4694968, at *5 ("interest in repayment of a loan does not establish an 'obvious and direct financial interest' in the infringement").

### III.  OBAN FAILS TO ADDRESS THE LEGAL STANDARD FOR UNFAIR TRADE PRACTICES CLAIMS.

In support of its unfair trade practice claims against Nautilus, Oban argues that "[t]he public has been deceived" and that "[t]he basic inquiry in an unfair competition action is whether the public is likely to be misled . . . ." (Pl's. Opp'n Br. at 6.) Oban's opposition disregards the separate requirement to state a plausible claim under the Lanham Act that the defendant use a trademark in commerce. (Def's Opening Br. at 10 (citing 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 406-407 (2d Cir. 2005).) Oban has not and cannot allege that Nautilus used Oban's trademark in commerce. Similarly, with respect to Oban's state law claim, Nautilus has established, and Oban has not attempted to refute, that trademark licensors are not liable under CUTPA for the acts of their licensees. (Id. at 12 (citing Burkert v. Petrol Plus, Inc., 579 A.2d 26, 36 (Conn. 1990).) Thus, Oban's unfair trade practice claims against Nautilus should be dismissed.

### IV.  OBAN'S TRADE DRESS INFRINGEMENT CLAIM IS NOT SAVED BY THE ATTACHMENT OF IMAGES TO THE AMENDED COMPLAINT.

The only articulation of Oban's alleged trade dress in the Amended Complaint is the conclusory statement that "[t]he Plaintiff's images . . . are non-functional, but distinctive and have acquired a secondary meaning identifying the product as a 60beat product." (Amended Complaint at ¶ 34). Oban also attached pictures of the images. (Id. at Exhibit P-2.) As explained in Nautilus' opening brief, this is insufficient to state a claim for trade dress

infringement.  (Def's Opening Br. at 13 (citing <u>ID7D Co., Ltd. v. Sears Holding Corp.</u>, No. 11-1054, 2012 WL 1247329, at *7-9 (D. Conn. Apr. 13, 2012).)

In its opposition brief, Oban argues:  "Rather than trying to verbally describe the similarities, Oban attached pictures which show how much the Bowflex product matched the 60beat product.  What could be more specific?"  (Pl's. Opp'n Br. at 6.)  Oban's argument fails for two reasons.  First, this Court has held that "a trade dress claim cannot be rescued by the mere attachment of brochures, photographs and specifications to the Amended Complaint as courts cannot be expected to distill from a set of images those elements that are common to a line of products and both distinctive and non-functional."  <u>ID7D</u>, 2012 WL 1247329, at *10 (internal quotations omitted).  Second, Oban misunderstands the specificity requirement of trade dress infringement.  The purpose of the requirement is not to establish the overall degree of similarity between a plaintiff's product and an allegedly infringing product.  Rather, it is to identify for the court and the defendants the specific aspects of the plaintiff's product that it asserts as trade dress.  <u>Id.</u> at *9.  Oban's images of its product do nothing to identify what aspects of its product are distinctive and non-functional and have acquired secondary meaning.  <u>Id.</u>  Thus, Oban's trade dress claim must be dismissed as insufficiently pleaded.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Memorandum of Law in Support of Defendant Nautilus, Inc.'s Motion to Dismiss, the Court should dismiss all of the claims against Nautilus in Oban's Amended Complaint.

| | |
|---|---|
| Dated: February 7, 2014 | Respectfully Submitted,<br><br>/s/ Matthew J. Becker<br>Matthew J. Becker (ct10050)<br>Thomas K. Hedemann (ct27529))<br>AXINN, VELTROP & HARKRIDER LLP<br>90 State House Square, 9th Floor<br>Hartford, Connecticut 06103<br>Tel: (860) 275-8100<br>Fax: (860) 275-8101<br>mjb@avhlaw.com<br>tkh@avhlaw.com<br><br>*Attorneys for Defendant Nautilus, Inc.* |